```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


ROCHE CAPITAL, LLC           *
                             *
v.                           *
                             *   Civil Action No. WMN-12-59
MISTY DELEGATO               *
                             *
                             *

 *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Before the Court is Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 14. The motion is fully briefed. Upon a review of the papers and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be denied.

**I. FACTUAL BACKGROUND**

This case was originally filed in the Circuit Court for Anne Arundel County on or about January 5, 2012. Plaintiff, Roche Capital, LLC (Roche Capital Delaware), is a Delaware limited liability company which was formed by Daniel Roche, a Maryland resident. Defendant is Misty Delegato, Daniel Roche's sister, who lives outside of Detroit, Michigan. This case arises out of a business relationship into which the two siblings entered. The facts relevant to the instant motion are as follows.

In October 1999, Roche formed a Maryland limited liability company called Roche Capital, LLC (Roche Capital Maryland) of which he was the sole member. In December 2002, Roche and Delegato formed another Maryland limited liability company, Revelar, LLC (Revelar), to operate a Michigan private duty home care agency. Roche Capital Maryland and Delegato were each 50% members of Revelar. Delegato performs the day to day management of the agency and Roche Capital Maryland was to provide the initial capital for the enterprise, although there is some dispute as to whether it actually did so. Roche Capital Maryland and Delegato subsequently formed yet another Maryland limited liability company, Sixty Crocker, LLC, (Sixty Crocker) in 2006, to function as the property management company for the real property housing Revelar's operations. Roche Capital Maryland and Delegato were each 50% members of Sixty Crocker as well.

According to the Complaint, beginning in December of 2010, Roche[1] made unsuccessful efforts to gain access to the full books

---

[1] Because of changes in the business form of Daniel Roche's various enterprises, as explained infra, there are some inconsistencies in the allegation of the Complaint. The Complaint equates "Roche" with Roche Capital, LLC, a Delaware limited liability company. Compl. ¶ 1. The Complaint then speaks of "Roche" as having taken actions in December of 2010. Compl. ¶ 5. The Delaware LLC, however, did not come into existence until October 2011. For the sake of simplicity, the Court will, where necessary, refer to actions that the Complaint attributes to the Delaware LLC as actions of Daniel Roche.

2

and records of Revelar and Sixty Crocker (collectively, the Companies). Compl. ¶ 5. During 2011, Roche also came to believe that Delegato was unilaterally using the resources of the Companies in contravention of legitimate business purposes and confronted Delegato regarding these issues. Id. ¶ 7. Also in 2011, Roche came to believe that Delegato was improperly asserting 100% ownership in the Companies. Id. ¶ 8.

Although not revealed in the Complaint, the plaintiff in this action did not come into existence until October 2011, when Roche formed a Delaware limited liability company under the name Roche Capital, LLC (Roche Capital Delaware), of which he was also the sole member. In November 2011, Roche executed articles of merger and merged Roche Capital Maryland into Roche Capital Delaware, designating Roche Capital Delaware as the "surviving company." As a result of the merger, Roche Capital Maryland ceased to exist.

Plaintiff Roche Capital Delaware brings this action seeking declaratory and injunctive relief. In Count I, Plaintiff seeks a declaration that Roche Capital Delaware is a 50% member of the Companies, with rights, inter alia, to participate in the management and operation thereof, to declare distributions, and to withhold and pay any tax obligations. In Count II, Plaintiff seeks a preliminary and permanent injunction restraining and enjoining Delegato from managing the Companies in contravention

of their respective operating agreements and mandating that Plaintiff be provided certain books and records of the Companies at designated intervals, that available cash be distributed to interest holders, and that no resources of the Companies be used to cover litigation costs related to this action.  Count III alleges a violation of the Maryland Limited Liability Company Act related to Delegato's refusal to provide the records and accounts of the Companies and Count IV seeks an accounting.

Defendant Delegato moves to dismiss the Complaint in its entirety, or in the alternative, for summary judgment on all claims.  Defendant raises two alternative grounds.  First, Delegato argues that due to non-assignment provisions in the operating agreements of the Companies restricting the transferability of members' interest or membership, Roche Capital Delaware never became a "member" of the Companies and thus lacks standing to bring this suit.  Second, Delegato argues that, even if Plaintiff has standing to bring suit, it has named the wrong defendant.  Because the Complaint asserts rights <u>vis a vis</u> the Companies, rather than Delegato individually, the Companies in Delegato's view would be the proper defendants.

**II. DISCUSSION**

    **A. Roche Capital Delaware's Standing to Sue**

The operating agreements under which both Revelar and Sixty Crocker were formed contained a provision stating that "[n]o

sale, transfer, assignment, pledge or other disposition of all or any part of an Interest (whether voluntary, involuntary, or by operation of law) may be made unless . . . a duly executed and acknowledged written instrument of assignment shall have been filed with the Company." Compl., Exs. A and B § 9.1(iii)(b). Furthermore, the agreements prohibited the assignment of a member's right to become a member absent the consent of the other 50% member. Id. § 9.2. Any attempted assignment in violation of these provisions "shall be void and ineffectual, and shall not bind or be recognized by the Company. Id. § 9.1(iv).

Defendant notes that, not only is the assignment of membership in the Companies limited by the operating agreements, it is also limited by the Maryland statute governing limited liability companies. While an interest in a limited liability company is assignable in whole or in part unless otherwise provided in the operating agreement, the assignment of an interest in a limited liability company does not entitle the assignee to "[b]ecome a member; or [e]xercise any rights of a member" "unless the operating agreement provides otherwise." Md. Code Ann., Corp. & Ass'ns § 4A-603. Here, of course, the operating agreements do not provide otherwise but, in fact, reinforce the restriction against the assignment of membership absent consent of the other 50% member.

5

Notwithstanding the restrictions on assignment in the operating agreements and in the limited liability statute, Plaintiff contends that courts, including Maryland courts, generally decline to enforce such anti-assignment provisions where the assignment had no adverse effect on the party seeking to enforce that provision.  Plaintiff notes that, insofar as Delegato is concerned, there is no functional difference between sharing membership in the Companies with Roche Capital Maryland or with Roche Capital Delaware.  Both entities are limited liability companies with the same sole member.[2]

Plaintiff relies primarily on Ruberoid v. Glassman Construction Company, 234 A.2d 875 (Md. 1967) and decisions following Ruberoid.  Ruberoid addressed a contractor's and surety's liability on a construction bond after a subcontractor failed to pay a material supplier.  The subcontractor had signed the subcontract as a sole proprietorship and the subcontract contained a non-assignment provision.  After entering the subcontract, however, the subcontractor incorporated his business.  Liability on the bond turned on whether the resulting corporation could still be considered a subcontractor and thus be covered by the bond.

Concluding that it could, the Maryland Court of Appeals observed that "'if an assignment results merely from a change in

---

[2] See, infra, note 3.

6

the legal form of ownership of a business, its validity depends upon whether it affects the interests of the parties protected by the nonassignability of the contract.'" 234 A.2d at 879 (quoting Trubowitch v. Riverbank Canning Company, 182 P.2d 182, 188 (Cal. 1947)). The court then noted that the contractor prohibited assignment so that he could be assured that the work would be performed by a subcontractor he thought competent. Because the new entity was wholly owned by and continued to be managed by the same individual, the court concluded that the assignment resulting from the incorporation did not affect the interests of the contractor and, therefore, that assignment "was valid in spite of the anti-assignment clause." 234 A.2d at 879. See also, Crown Oil and Wax Company of Delaware, Inc., 578 A.2d 1184, 1193 (Md. 1990) (following the holdings in Ruberoid and Trubowitch after concluding that there was "clearly no detriment" to the non-assigning party). This approach has been adopted in numerous jurisdictions in a variety of contexts. See, Elzinga & Volkers, Inc. v. LSSC Corp., 838 F. Supp. 1306, 1314 (N.D. Ind. 1993) (allowing new entity to enforce arbitration clause despite a merger and change of name); Mellgren Plumbing Shop, Inc. v. Lewis & Tinsley, Inc., 90 N.W.2d 78 (S.D. 1958) (holding that contract provision prohibiting assignment did not prohibit an assignment by partnership to corporation which was organized to take over business of the

7

partnership and which was owned, controlled, and managed by the individual partner contractors); TXO Production Co. v. M.D. Mark, Inc., 999 S.W.2d 137, 141 (Tex. Ct. App. 1999) (collecting cases in which the mergers at issue were found not to be prohibited where the resulting change was simply one of corporate form and did not involve "increased risk to the non-merging party").

In arguing that the merger of Roche Capital Maryland into Roche Capital Delaware divested Plaintiff of any status as a member of the Companies, Defendant Delegato relies on cases which are readily distinguishable from Ruberoid as well as the case at bar. See Reply at 3 (citing Nicolas M. Salgo Assocs. v. Cont'l Illinois Prop., 532 F. Supp. 279, 283 (D.D.C. 1981) and Parks v. CA1 Wireless Sys., Inc. 85 F. Supp. 2d 549, 555 (D. Md. 2000)). In both Salgo and Parks, the court based its decision on the fact that the event deemed an assignment was more than just a change in legal form but resulted in the non-assigning partner being forced to accept new and substantively different partner. In Salgo, one of the original general partners was merged into a third-party stranger to the contracting parties' relationship after that third party launched a hostile takeover of that general partner. The court found that merger violated the anti-assignment clause of the partnership agreement because, inter alia, it "effectively forced plaintiff to accept a new

partner without his consent." 532 F. Supp. at 283. In Parks, this Court specifically noted that as a result of the merger in question, the partnership interest was "transferred to a different corporation which is controlled by different stockholders." 85 F. Supp. 2d at 555. Under those circumstances, this Court held, "a corporate merger can result in the violation of an anti-assignment provision contained in a contract." Id. (citing Salgo and PPG Indus., Inc. v. Guardian Indus. Corp., 597 F.2d 1090, 1095 (6th Cir. 1979)).

Given that the merger of Roche Capital Maryland into Roche Capital Delaware and resultant dissolution of Roche Capital Maryland did not make any substantive difference vis a vis the Companies, this Court finds that the merger did not violate the anti-assignment provisions in the operating agreements and, therefore, Roche Capital Delaware has standing to sue as a member of the Companies.[3]

---

[3] While the 2011 merger of Roche Capital Maryland into Roche Capital Delaware did not run afoul of the anti-assignment clause, the Court has some concern about an earlier transaction that Plaintiff references as part of a waiver argument. Plaintiff reports that in 2005, an irrevocable family trust, known as the Benfield Road Trust, was made the 100% owner of Roche Capital Maryland. When Roche Capital Delaware was formed, the Benfield Road Trust was made the 100% owner of that entity. Plaintiff argues that Delegato knew of the 2005 change in ownership and did not object and, therefore, has waived any argument regarding the 2011 merger.

Delegato counters that, while she was aware of the formation of the Benfield Road Trust because her brother had asked her to

**B. Naming the Proper Defendants**

Defendant Delegato next argues that, even if Plaintiff has standing to bring this suit, the relief Plaintiff seeks cannot be obtained from her, but only from Revelar and Sixty Crocker.[4] Delegato notes that the injunctive and declaratory relief relates to rights and obligations owed to Plaintiff by the Companies, and not Delegato individually.  For example, Plaintiff seeks a declaration that it is a "full, equal 50% member" of the Companies with the right to participate in their management and operation.  Compl., Count I Prayer for Relief. Plaintiff also seeks an accounting, which obviously is an accounting of the Companies, not of Delegato.  Compl. Count IV.

In response to the motion, Plaintiff acknowledges that it does not seek to hold Delegato personally liable for the

---

serve as the "trust protector," it was not until May of 2011 that she learned that Roche Capital Maryland had been placed in that trust.  She raises the concern that the placement of Roche Capital Maryland and now Roche Capital Delaware into that offshore trust effectively made her a "co-manager of Revelar with whomever in the world the trustee or trustees are of that trust."  Reply at 4.  While Delegato raises this concern in response to Plaintiff's waiver argument, the record is insufficient at this time to even begin to analyze what potential effect that transfer of ownership might have on Plaintiff's standing to bring this action.

[4] Delegato posits that the only reason Plaintiff has not named the Companies as Defendants is to prevent her from using the resources of the Companies to defend this litigation.  She suggests that these costs should be covered by the Companies, regardless, under indemnification provisions in the operating agreements. Reply at 5 n. 5.  The resolution of that issue is not before the Court at present.

obligations of the Companies. Instead, Plaintiff contends the relief requested is directed "toward the acts of Delegato as the de facto managing member thereof." Opp'n at 6. Implicit in that acknowledgment is that it is obligations owed to Plaintiff by the Companies that is at issue in this action. Plaintiff also asks that, in lieu of dismissing this action if it finds the Companies are proper defendants, the Court give it leave to amend the complaint to add them.

The Court finds that the Companies should be made defendants in this action, but in addition to Delegato and not instead of Delegato. As noted by Delegato, if declaratory relief is sought, all persons with any interests that would be affected by the declaration should be made a party. Mot. at 9. At this stage of the litigation, the Court cannot conclude that Delegato's interests would not be affected by the outcome of this litigation.

For these reasons, Defendant's motion will be denied. Plaintiff is given leave to amend the Complaint to add the Companies as defendants. A separate order consistent with this memorandum will be issued.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: May 17, 2012