IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROCHE CAPITAL, LLC      *
     *
v.      *
     *    Civil Action No. WMN-12-59
MISTY DELEGATO <u>et al.</u>      *
     *
     *
  *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## <u>MEMORANDUM</u>

Before the Court is Defendants' Motion to Dismiss, or in
the Alternative, for Summary Judgment, ECF No. 58, and
Plaintiff's Cross Motion for Summary Judgment.  ECF No. 62.
The motions are fully briefed.[1]  Upon a review of the papers and
the applicable case law, the Court determines that no hearing is
necessary, Local Rule 105.6, and that both motions will be
granted in part and denied in part.

## I. <u>FACTUAL BACKGROUND</u>

This case arises out of the once harmonious, but now highly
contentious, business relationships between two adult siblings,
Daniel Roche (Roche), who lives in Maryland, and Misty Delegato
(Delegato), who lives in Michigan.  Both sides of this dispute
have included in their papers accusations and counter-

---

[1] Defendants argue that Plaintiff's motion is more than fully
briefed in that portions of Plaintiff's reply in support of its
cross motion are more properly seen as a surreply in further
opposition to Defendants' motion and, on that ground, have moved
to strike those portions.  ECF No. 71.  The motion to strike is
also fully briefed and will be denied for reasons stated below.

accusations of bad faith, deception, malfeasance, and opportunism on the part of the other sibling which are, for the most part, irrelevant to the central legal issues raised in the pending cross motions. The central relevant facts, which are largely undisputed, are as follows.

The first business venture into which the siblings entered and the venture most relevant to this action was the creation and operation of Relevar, LLC (Relevar), a private duty home health care staffing business located in Detroit, Michigan. Relevar was formed in or about January 2003 as a Maryland limited liability company with two 50% member/owners: Delegato and Roche Capital, LLC (Roche Capital Maryland), a Maryland limited liability company of which Roche was the sole member/owner. Relevar has been a highly successful and profitable business and the parties agree that Delegato was the driving force behind that success, devoting long hours to the day-to-day operations of the enterprise. Roche has had a very limited role in the business. In its first year of operation, Roche provided several loans to the business totaling $65,600.00. Those loans were fully repaid, however, by December 2005.

On or about November 23, 2005, Roche entered into an agreement that, while not changing the membership/ownership of Relevar, did alter the member/owner structure of Roche Capital

Maryland. Roche assigned 100% of his ownership/membership in Roche Capital Maryland to a trust he had recently formed in the Cook Islands, the Benfield Road Trust (the Trust). Roche explains that he and his wife were in the midst of some marital difficulties and the Trust was formed for the purpose of protecting his assets from adverse effects that might result should his wife file for divorce. When the Trust was formed, the named trustees were: the Cook Island Trust, LTD; James Waller, Roche's accountant; and William Davidow, Roche's attorney. Delegato was named as the Trust's "Protector," although she states that she was unaware of the nature of that role and was never called upon to perform or function in any role connected with the Trust. Delegato Decl. at ¶ 3. She also states that she was unaware at the time that Roche Capital Maryland's interest in Relevar was being placed in the Trust. Id. ¶ 4.

The next business entanglement between the siblings arose in June of 2005 when Roche asked Delegato if Relevar could loan money to another of Roche's business concerns, the "Eastport Yacht Center" in Annapolis, Maryland. While in the course of these proceedings there has been some confusion as to from whom and to whom the loan was made, it is clear the loan was made by Relevar to Eastport Yachting Center, LLC (Eastport), another Maryland limited liability company. See Delegato Dep. at 264-

268; Ex. 33 to Pl.'s Mot. (Feb. 7, 2007 Promissory Note between Relevar and Eastport Yachting Center, LLC). This loan was for approximately $100,000.00 and for several years, Eastport was making payments to Relevar on the loan.

In 2006, the siblings caused to be formed another Maryland limited liability company, 60 Crocker, LLC, (60 Crocker), to function as the property management company for the real property housing Relevar's operations. Delegato and Roche Capital Maryland were each 50% members of 60 Crocker as well. As with Relevar, the primary management responsibilities for 60 Crocker fell on Delegato.

In April 2007, Roche approached his sister seeking financial assistance with another of his business endeavors, this time, a real estate project located at 20 East Fort Avenue in Baltimore City (the East Fort Project). According to Roche, this was a project to develop 28 residential condominiums in Baltimore's Federal Hill neighborhood. Although the particular legal entities involved in this venture are less than clear, Delegato wrote a check for $125,000.00 to an entity called "20 East Fort LLC."[2] None of these funds were ever repaid. According to Roche, the East Fort Project was a victim of the real estate market collapse of 2008 and Roche Capital Maryland

_____

[2] It is not entirely clear from the record whether these funds came from Relevar or from Delegato personally.

4

itself lost over $1,400,000.00 by the time it exited the project. Roche Aff. ¶ 8.

In part due to the losses sustained in the East Fort Project, the relationship between Roche and Delegato became strained. Roche also began experiencing other financial difficulties and began asking Delegato for distributions from Relevar. When those distributions were not forthcoming, Roche began requesting financial information and reports regarding Relevar and 60 Crocker which Delegato did not provide. In response, Delegato requested information regarding the East Fort Project and, in her view, her brother failed to provide satisfactory responses. At some point, repayment on the Eastport Yacht Center loan ceased, presumably at Roche's direction. Also around that time, at Roche's request, Delegato resigned as the Trust's Protector in September 2009. Roche explained that he was concerned that his growing financial difficulties might expose her to liability if she remained as the Trust's Protector.

Roche engaged in one additional restructuring of his business enterprises in October 2011 when he formed a Delaware limited liability company under the name Roche Capital, LLC (Roche Capital Delaware) of which he was also the sole member. In November 2011, Roche executed articles of merger and merged Roche Capital Maryland into Roche Capital Delaware, designating

Roche Capital Delaware as the "surviving company." As a result
of the merger, Roche Capital Maryland ceased to exist. Like
Roche Capital Maryland, Roche Capital Delaware was wholly owned
by the Trust.

After Roche's unsuccessful efforts to gain access to the
full books and records of Relevar and 60 Crocker, Roche Capital
Delaware filed this action in the Circuit Court for Anne Arundel
County, Maryland on January 5, 2012, seeking declaratory and
injunctive relief. In Count I, Plaintiff seeks a declaration
that Roche Capital Delaware is a 50% member of Relevar and 60
Crocker, with rights, <u>inter alia</u>, to participate in the
management and operation thereof, to declare distributions, and
to withhold and pay any tax obligations. In Count II, Plaintiff
seeks a preliminary and permanent injunction restraining and
enjoining Delegato from managing the companies in contravention
of their respective operating agreements and mandating that
Plaintiff be provided certain books and records of Relevar and
60 Crocker at designated intervals, that available cash be
distributed to interest holders, and that no resources of the
companies be used to cover litigation costs related to this
action. Count III alleges a violation of the Maryland Limited
Liability Company Act related to Delegato's refusal to provide
the records and accounts of the companies, and Count IV seeks an
accounting.

After removing the case to this Court, Delegato moved to
dismiss the Complaint in its entirety, or in the alternative,
for summary judgment on all claims.  Defendant raised two
alternative grounds.  First, Delegato argued that the merger of
Roche Capital Maryland into Roche Capital Delaware violated the
non-assignment provisions in the Relevar and 60 Crocker
operating agreements and thus, Roche Capital Delaware had no
standing to sue.  Second, Delegato argued that, because the
Complaint asserts rights <u>vis a vis</u> Relevar and 60 Crocker,
rather than Delegato individually, those entities, and not
Delegato, would be the proper defendants.

The Court denied Delegato's motion, finding that the
transition of Roche Capital Maryland into Roche Capital Delaware
did not make any substantive difference as to Relevar or 60
Crocker and, therefore, Roche Capital Delaware had standing to
bring suit.  The Court agreed, however, that much of the relief
sought in the Complaint would be obtained from Relevar and 60
Crocker, not from Delegato, individually.  The Court granted
leave to amend the Complaint to add those companies and
Plaintiff amended the Complaint accordingly.

In response to the Amended Complaint, Delegato, Relevar,
and 60 Crocker filed a Counterclaim against Roche Capital
Delaware and a Third Party Complaint against Roche, individually
(the Counterclaim).  ECF No. 28.  Count One asserts that Roche

Capital[3] breached the Relevar Operating Agreement by: (1) failing to make a $100,000 capital contribution it promised to make under the Operating Agreement, and (2) "by transferring ownership and control over its 50% share of Relevar to the Benfield Road Trust" without notice to or approval by Delegato. Id. at 12.  Count Two asserts a claim of "constructive fraud" against Roche and Roche Capital related to the formation of Relevar and Roche's recent efforts to extract more distributions from Relevar.  Count Three asserts a breach of the 60 Crocker Operating Agreement.  Specifically, it is alleged that: (1) Roche falsely signed the Operating Agreement as a "member" of Roche Capital even though, at the time of signing, Roche Capital had been secretly transferred to the Trust, and (2) that Roche failed "to maintain 60 Crocker in good standing."  Id. at 15.

The remaining three counts in the Counterclaim/Third Party Complaint relate to Roche's Maryland-based business endeavors. Count Four asserts a breach of contract related to the Eastport Yacht Center loan and seeks repayment from Roche of the outstanding balance owed, $68,000, plus interest.  Count Five brings a claim of Fraudulent Misrepresentation and Concealment related to alleged misrepresentations made by Roche concerning

---

[3] The distinction between Roche Capital Maryland and Roche Capital Delaware is generally immaterial to the discussions that follow so the Court, from this point, will simply use the term "Roche Capital" to refer to the permutation of the entity in existence at the time.

the East Fort Project.  Count Six brings a claim of Unjust
Enrichment, asserting that, regardless of the truth or falsity
of the statements made concerning the East Fort Project, "Roche
nevertheless has long since forfeited any right to retain the
$125,000 he persuaded Delegato to 'invest' with him."  Id. at
18.

Following the filing of the Counterclaim, Roche Capital
moved to further amend its complaint to add claims for breach of
the Relevar and 60 Crocker Operating Agreements, conversion of
funds, fraudulent concealment, negligence, and violations of the
Maryland Limited Liability Company Act.  Roche Capital avers
that, through discovery in the action, it became aware that
Delegato was taking distributions from Relevar and 60 Crocker
that were inconsistent with the terms of the Operating
Agreements.  Over partial objection, the Court granted the
motion, while expressing concern about the viability of the
conversion claim.  ECF No. 55.

Discovery has now closed and the parties have filed the
pending summary judgment motions.  In their motion, Defendants
focus on the 2005 transfer of Roche Capital into the Trust.  As
that issue relates to Roche Capital's claims, Defendants contend
that, because Roche is no longer the owner/member of Roche
Capital, he had no authority to bring this action on Roche
Capital's behalf.  In addition, they view the transfer to the

Trust as a violation of the anti-assignment provision of the
Relevar Operating Agreement and, accordingly, Roche Capital was
divested of its membership rights in Relevar.  As all of Roche
Capital's claims are dependent, in their view, on Roche
Capital's membership status, its claims would all fail.  For
similar reasons, Defendants argue that they are entitled to
summary judgment on Counts One, Three and Four of the
Counterclaim.  In addition, they renew their challenge to the
legal validity of a conversion claim in this context and argue
that they are entitled to judgment as to the Eastport Yacht
Center loan as Roche has acknowledged that the amount sought is
owed.

     In addition to opposing the Defendants' motion, Roche
Capital seeks judgment on all claims in the Counterclaim/Third
Party Complaint.  Roche Capital submits that the claims are not
factually supported for reasons discussed below.

## II. LEGAL STANDARD

     The Court may grant summary judgment when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986);
see also Felty v. Graves–Humphreys Co., 818 F.2d 1126, 1128 (4th

Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).  Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).

"When both parties file motions for summary judgment ... [a] court applies the same standard of review."  McCready v. Standard Ins. Co., 417 F. Supp. 2d 684, 695 (D. Md. 2006) (citing Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991)).  Furthermore, "each motion [will be considered by a court] separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

**III. DISCUSSION**

### A. Transfer of Ownership of Roche Capital to the Trust

Defendants' two arguments related to the transfer of Roche Capital to the Trust - (1) because of the transfer, Roche lacked authority to authorize the filing of this suit and (2) the transfer was a breach of the anti-assignment provision – both fail.  As explained below, the former fails because there is evidence in the record sufficient at this stage of the litigation to establish that Roche, while no longer a member of

11

Roche Capital after the transfer, had authority as manager of
Roche Capital.  The later argument fails simply because the
ownership interests of Relevar was not changed by the transfer
to the Trust, only the ownership interest of Roche Capital.
That change in ownership interest is not governed by the plain
language of the Relevar Operating Agreement.

In support of his authority as manager of Roche Capital
after the transfer, Roche relies primarily on four documents.
The first is a November 18, 2005, Resolution of Roche Capital,
LLC, signed by Roche, stating that "Daniel J. Roche shall be the
Manager of [Roche Capital, LLC]."  Pl.'s Mot., Ex. 34.  This
document is of marginal import, given that it was executed prior
to the transfer to the Trust.  The second document is a June 3,
2013, affidavit of Roche's former attorney, Maurice Offit.  Id.,
Ex. 8.  In that affidavit, Offit affirms that, as of June 18,
2011, the date of an attached email sent by Offit to Delegato's
counsel, "Daniel Roche was the manager of Roche Capital, LLC"
and "[t]o the best of my knowledge, Daniel Roche continues to be
the manager of Roche Capital, LLC with authority to act on its
behalf."  Id. ¶ 5.  Although Roche states in his motion that
Offit was counsel for the Trust, Pl.'s Mot. at 21, the affidavit
simply states that he was counsel for Roche at the time that
Relevar was formed and when he sent the June 18, 2011, email.
Id. ¶¶ 6, 8.

The last two documents are more compelling. Roche attaches to his Reply memorandum a July 18, 2013, affidavit of Antony Will, in which Will represents that he is "the authorized representative . . . of the Cook Islands Trust, Ltd., which is the sole trustee of the Benfield Road Trust ("Trust")."  Pl.'s Reply, Ex. 1.[4]  Will further states:

> 3. Daniel Roche is, and always has been, the Manager of Roche Capital, LLC ("Roche Capital") an asset owned by the Trust, with full power and authority to handle all matters related to the operation of Roche Capital.

> 4. The delegation of Roche Capital's management authority to Mr. Roche was provided in a Resolution of Members of Roche Capital dated November 18, 2005, and is also provided pursuant to the operating agreement of Roche Capital whereby Mr. Roche was confirmed as the sole manager of Roche Capital, and was given authority to manage Roche Capital in all respects. The operating agreement of Roche Capital, and accordingly the authority for Mr. Roche as Manager of Roche Capital to act and represent Roche Capital in all matters, was adopted and approved by the Trustee of the Trust and continues in effect as a delegation of authority to Mr. Roche.

> 5. As the Manager of Roche Capital, Mr. Roche had the authority to institute [this suit] and to take any and all actions in furtherance thereof.  Mr. Roche continues of have (sic) the authority to pursue this action.

> 6. To the extent that it is necessary, this Affidavit serves as the Trust's acknowledgment, approval and ratification of the actions taken by Mr. Roche in initiating and pursuing this lawsuit.

---

[4] This sentence actually reads, "I am the authorized representative [INSERT DETAIL ABOUT TITLE AND ROLL] of the Cook Islands Trust, Ltd. which is the sole trustee of the Benfield Road Trust ("Trust")."

Id.

Roche also attaches to his Reply a partially dated, October 2011[5] Operating Agreement of Roche Capital, LLC, executed by the Trustee of the Cook Islands Trust, LTD.  Reply, Ex. 2.  This Operating Agreement provides that "[t]he sole Manager of the Company, and of each Series, shall be Daniel Roche, who shall have all of the rights, responsibilities, privileges and duties of Managers as provided in this Agreement."  Id. ¶ 9.1.  Among the specific powers listed is the authority "[t]o commence or defend litigation."  Id. ¶ 9.6(e).

Defendants cannot contest that, should the Court consider these last two documents, Roche's authority to bring and pursue this suit is incontrovertible.  Instead, Defendants contend that Roche's submission of these documents and the arguments supported by these documents constitutes impermissible surreply. Defendants reason that the issue of Roche's authority to file a suit on Roche Capital's behalf was raised in their motion, opposed in Roche's opposition/cross motion, and further supported by Defendants' reply/opposition.  To further argue this issue in Plaintiff's reply, in Defendants' view, is to take an impermissible "second bite of the apple."  Defendants also argue that the 2011 Roche Capital Operating Agreement should

---

[5] The document states that it "is made this _____ day of October, 2011."

have been produced in discovery but was not.  On these grounds,
Defendants move to strike these two documents and any argument
relying on those documents.  ECF No. 71.

On the one hand, there is some validity to Defendants'
argument.  Had Plaintiff procured the affidavit from Mr. Will
when this issue was first raised, it would have been immediately
resolved.  Plaintiff's counsel acknowledges that he could have
attempted to obtain this affidavit sooner, but did not do so
because he believed that the affidavit of Mr. Offit was
sufficient to put the issue to rest.  ECF No. 72 at 4 n.2.  He
also explains it was only in the process of having Mr. Lee's
affidavit prepared that he was alerted to the existence of the
October 2011 Operating Agreement which Mr. Offit was then able
to locate in his files.  This would indicate that Plaintiff
perhaps did not look as hard as it should have for documents
responsive to Defendants' discovery requests.

On the other hand, there are other considerations that
undermine any determination that Plaintiff should be penalized
for its late production.  In this Court's view, there has never
been a real concern that Roche does not, in fact, remain in
control of Roche Capital; Defendants' hope was simply that there
was insufficient documentation of that authority.  When
Defendants complain of the adverse consequences of the transfer
to the Trust, they raise generally inchoate consequences: what

would happen if the trustees were to sell its interest in Relevar or if Roche were to die or become incompetent?  See Defs.' Mot. at 11-12.  They do not contend that, presently, Roche has stopped exercising control over Roche Capital.

The Court notes, that in the recent course of dealings between the siblings, Delegato has raised numerous challenges to her brother's continuing authority over Roche Capital to which Roche has responded, apparently to Delegato's satisfaction. Pl.'s Mot. at 10-13.  For example, on June 9, 2011, in the context of Delegato asking Roche to execute a confidentiality agreement, Delegato expressed her desire to be "clear on [Roche's] standing with Roche Capital and the Trust."  Pl.'s Mot., Ex. 255.  Shortly thereafter, on June 27, 2011, one of the series of attorneys engaged by Delegato sent a letter to Mr. Offit stating, "I acknowledge your confirmation that you are representing Dan Roche and that he has the authority to request information on Roche Capital LLC's behalf as its manager."  Id., Ex. 27 (emphasis added).

The Court also notes that Delegato's responses to discovery requests were not as thorough as they might have been.  Until Delegato's counsel presented a signed copy of the January 2003 Relevar Operating Agreement during a March 28, 2013, deposition, the only copy of that agreement was an unsigned copy.  When asked why this executed version of the document had not been

previously produced, Delegato's counsel attributed it to a clerical error. At her deposition on April 1, 2013, Delegato was asked about the late production of this document and she answered that she had just recently found the document and that she had not found it before because "I didn't make a real thorough search in the beginning because I thought Dan had one and he would come up with it." Delegato Dep. at 120. This document has some potential significance in that there are handwritten edits by Delegato on this version of the agreement – an agreement she maintains she blindly entered in reliance on her brother's guidance.

The Court will deny the motion to strike.[6]  With that denial, there is no question that Roche had authority to bring this suit.

As to the second argument related to the impact of the transfer of Roche Capital to the Trust, the Relevar Operating Agreement contains the following restrictions of assignment or transfer:

> 9.1(i) Each Interest Holder agrees that he/she/it will
> not transfer, or permit the transfer of, any Interest

---

[6] In addition to challenging its late production, Defendants suggest that the document might have been recently fabricated. ECF No. 71 at 6.  Because the document was produced after the close of discovery, Defendants have not had the opportunity to explore that theory.  The Court would consider a motion to re-open discovery for the very limited purpose of probing the bona fides of this document.

owned by him/her/it, other than in accordance with the terms and conditions of the Agreement . . . .

. . .

9.1(iii) No sale, transfer, assignment, pledge or other disposition of all or any part of an Interest (whether voluntary, involuntary, or by operation of law) may be made unless . . . a duly executed and acknowledged written instrument of assignment shall have been filed with the Company . . . .

9.1(iv) Any assignment, sale, exchange or other transfer in contravention of any of the provisions of this Article IX shall be void and ineffectual, and shall not bind or be recognized by the Company.

9.2 No Member shall have the power to grant to an assignee or transferee any part of his/her/its Interest the right to become a Member in the Company . . . .

ECF No. 58-4.

The definitional section of the Agreement provides the following definitions of "Interest" and "Interest Holder":

"Interest Holder" means any person who holds an Interest, whether as a member or as an unadmitted assignee of a Member, or a successor in interest to another Interest Holder.

"Interest" means an Interest Holder's share of the capital, profits and losses of the Company and the right to receive distributions from the Company.

Id., Article II (emphasis added). "The Company" referred to, obviously, is Relevar. See id., Preamble ("the parties wish to organize and operate a limited liability company under the laws of the United States, i.e., Relevar, LLC (the "Company")") and § 1.1 ("The name of the Company shall be 'Relevar, LLC.'") Thus,

18

while the anti-assignment provision in the Operating Agreement may be broad and expansive, it only related to attempted assignment of an Interest in Relevar.

To avoid this plain reading of the Agreement, Delegato invokes what she states was the intent of the parties when forming Relevar:

> Here, when siblings Delegato and Roche first organized Relevar, they decided that each should have a half-interest in Relevar: Delegato in her own name and Roche in the name of his (then) wholly-owned, single member Maryland LLC, Roche Capital. <u>But, in reality, of course</u>, it was Roche himself who – as sole owner, manager, and alter-ego of Roche Capital – was, from the outset, Delegato's <u>de facto</u> 50% partner in Relevar.

ECF No. 66 (Defs.' Reply) at 7 (emphasis added). While it may have been her intent to enter into an agreement with her brother, that is not the agreement that she signed. "In reality," the agreement that she signed was with Roche Capital and Roche Capital remains the 50% owner/member of Relevar.[7]

Defendants also rely on language from this Court's ruling on a previous motion in which the Court stated that the anti-assignment provision of the Operating Agreement was meant to prevent "'the non-assigning partner [from] being forced to

---

[7] Defendants highlight that the Operating Agreement was drafted by Roche and that Delegato had little experience at the time in business. These allegations are more relevant, however, to Defendants' counterclaims, particularly the constructive fraud claim.

accept [a] new and substantially different partner.'"  ECF No. 66 (quoting ECF No. 17, May 17, 2012, Mem. at 8).  Applying that rule, the Court held that, while the merger of Roche Capital Maryland into Roche Capital Delaware did involve a transfer of ownership of Relevar, the merger did not make any substantive difference and thus, did not divest Roche Capital of its status as member of Relevar.  ECF No. 17 at 9.  The transfer of ownership of Roche Capital to the Trust, however, did not transfer an Interest in Relevar and thus, the Court never reaches the "substantive difference" inquiry.

### B. Plaintiff's Conversion Claim

Under long and well established Maryland law, "[t]he general rule is that monies are intangible and, therefore, not subject to a claim for conversion."  <u>Allied Inv. Corp. v. Jasen</u>, 731 A.2d 957, 966 (Md. 1999).  The rare exception to that rule is when the plaintiff "can allege that the defendant converted specific segregated or identifiable funds."  <u>Id.</u>  Once monies are commingled with other funds, however, they lose their separateness for purposes of a conversion claim.  <u>Laster v. Guttman</u>, 5 A.3d 79, 88 (Md. Ct. Spec. App. 2010).  "When there is no obligation to return the identical money, but only a relationship of debtor or creditor, an action for conversion of the funds representing the indebtedness will not lie against the

debtor." <u>Lawson v. Commonwealth Land Title Ins. Co.</u>, 518 A.2d 174, 177 (Md. Ct. Spec. App. 1987).

Here, Plaintiff simply alleges that it was entitled to 50% of the annual distributions from Relevar and 60 Crocker and that Delegato refused to pay that 50% share. Third Am. Compl. ¶¶ 33-35. A claim for a percentage of annual profits from an entity is not a claim for separate and identifiable funds, but is simply a claim for commingled funds from those entities' operating accounts. Plaintiff makes no substantive argument to the contrary.[8]

### C. Breach by Failure to Make Capital Contribution

In the Counterclaim, Defendants assert that Roche Capital also breached the Relevar Operating Agreement by failing to make a $100,000.00 capital contribution to Relevar that was required under the agreement. Roche Capital argues it is entitled to summary judgment on three grounds: 1) that it provided all the funding necessary to get Relevar up and running and the additional capital was unnecessary; 2) that Delegato also failed to make the capital contribution that she was required to make

---

[8] Twisting Maryland's longstanding precedent, Plaintiff argues that "it is clear that a claim for conversion will lie where monies are diverted in an identifiable <u>transaction</u> and are not commingled with other funds." Pl.'s Mot. at 15 (emphasis added). It is not diverting transactions that must be identified, but diverted monies or funds.

under the agreement,[9] and 3) that Defendants waived any action for breach of this requirement by failing to raise the issue for almost a decade. Although not raising this issue as a ground for entry of summary judgment in their favor in their original motion, in their opposition to Roche Capital's motion, Defendants argue that it is they that are entitled to summary judgment based on the undisputed fact that Roche Capital did not make that contribution.

The Court finds that neither side is entitled to judgment on this issue. As noted above, the record shows that Roche Capital made several loans to Relevar, but all of those loans were repaid. While Roche Capital may argue that Relevar never needed any more operating capital than it provided (a claim Delegato disputes), the agreement clearly provided that it make the full capital contribution "upon the execution" of the agreement, Operating Agreement, § 3.1, and this Roche Capital did not do. While Delegato states in her pleadings that she fulfilled her capital contribution requirement by providing more than $100.00 in property to Relevar, which she very likely did, there is no evidence in the record of that contribution. Notwithstanding these possible breaches, it is also clear that

_____

[9] Defendants point out that Delegato's capital contribution obligation was limited to $100.00 and she "most certainly contributed property in at least that amount." ECF No. 66 at 23 n.11.

the failure to make a capital contribution only arose as an issue relatively recently, when the relationship between Roche and Delegato began to fray.  Although Roche Capital frames the argument only in terms of waiver, the lengthy delay might also implicate laches or a limitations defense.  Regardless, the Court finds neither party is entitled to judgment on this issue on the current record.

### D. Constructive Fraud

"Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.  Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud."  Scheve v. McPherson, 408 A.2d 1071, 1076 (Md. Ct. Spec. App. 1979).  As the Maryland Court of Special Appeals has explained, the "classic example of constructive fraud" "usually arises from a breach of duty where a relationship of trust and confidence exists."  Crawford v. Mindel, 469 A.2d 454, 459 (Md. Ct. Spec. App. 1984).  "Where . . . a party is justified in believing that the other party will not act in a manner adverse or inconsistent with the reposing party's interest or welfare, constructive fraud may be found to arise from a violation of this belief."  Id.

In moving for summary judgment on this claim, Roche and Roche Capital narrowly focus on the lack of harm to Delegato from the formation of Relevar as a Maryland company as opposed to a Michigan company, as though that issue was the substance of the constructive fraud claim. See Pl.'s Mot. at 29; Pl.'s Reply at 16-17. Defendants' claim, however is much broader. Defendants allege that Roche, taking advantage of his sister's trust and lack of business experience, had her enter into a business arrangement whereby he, through his holding company, would obtain a 50% interest in a business to which he was required to contribute little or nothing. The only tangible obligation imposed on Roche Capital by the Agreement was the capital contribution of $100,000, which Plaintiff now argues it was not actually required to contribute. In contrast, Delegato was compelled under the agreement "to devote her full time and effort to the business and affairs of the Company." Relevar Agreement, § 4.4. The record indicates, and Roche does not dispute, that Delegato devoted more than full time to the enterprise. See Pl.'s Ex. 23, May 2, 2011 email from Roche to Delegato ("if you still feel taken advantage of, my guess is that it is because you have worked so hard and had great success while I have been a 50% owner taking a back seat to all the work"); Defs. Reply, Ex. E, Feb. 11, 2008 email from Roche to Delegato ("You have been driving the Relevar train 100% on your

own."). This arrangement appears so patently unfair that a finder of fact could certainly find that Roche took unfair advantage of his sister's trust.

**E. Breach of the 60 Crocker Agreement**

The thrust of this Defendants' claim that Roche and Roche Capital breached the 60 Crocker Agreement is premised on the fact that Roche signed the agreement as "member" of Roche Capital and not as "manager." It is undisputed that, at the time Roche signed the agreement, the Trust was the sole member, not Roche. Defendants claim that Roche intentionally hid this material fact and, as a result, the agreement is void <u>ab initio</u>. Plaintiff responds that Roche signing as "member" instead of "manager" was simply a scribal error and, to the extent it matters, the agreement can be reformed to make it compatible with the clear intent of the parties. Roche asserts that Delegato was well aware at the time this agreement was entered that Roche Capital had been placed in the Trust.

While Delegato disputes that she knew that Roche was not the owner/member of Roche Capital when 60 Crocker was formed, there is certainly evidence in the record that would lead one to conclude that she did. She was designated the Protector of the Trust. Thus, even if she was unaware of precisely what Roche was placing in the Trust, there is little indication that he was

attempting to conceal the Trust from her.  Neither Plaintiff or
Defendants are entitled to summary judgment on this claim.

In addition, Defendants proffer that Roche materially
breached the 60 Crocker Agreement by "failing, contrary to the
promise he made therein, to maintain 60 Crocker in good
standing, a status it consistently has failed to enjoy since in
or about October 2008."  Defendants' argument on this issue is
limited to a two sentence footnote in which they respond to
Plaintiff's contention that nothing in the 60 Crocker Agreement
requires Roche to maintain 60 Crocker in good standing in
Maryland.  ECF No. 66 at 25 n.13.  Defendants counter that
Section 12.1(i) of the Agreement "imposed upon Roche the duty to
'file and record . . . all . . . instruments and amendments
[required] to qualify, or to continue to qualify, [Sixty
Crocker] to do business in' Maryland"  Id. (alterations by
Defendants).  Section 12.1(i) actually provides that Roche must
perform those acts "to qualify, or to continue to qualify, the
Company to do business in the jurisdictions in which the Company
conducts business."  Defs.' Ex. 5.  Defendants do not point to
evidence that Roche failed to comply with that requirement.

### F. The Eastport Yachting Center Agreement Claim

In Count Four of the Counterclaim, Defendants seek
repayment of the loan Relevar made to the Eastport Yachting
Center.  As Plaintiff correctly observes, this loan was made not

to Roche or Roche Capital, but to Eastport Yachting Center, LLC, and this Defendants have acknowledged. <u>See</u> Defs' Mot at 16 ("Relevar advanced funds to Eastport"); Delegato Dep. at 265-66 (stating that loan checks were made out to Eastport). To keep this claim alive, Defendants now assert that Roche "promised Delegato that he would guarantee the loan in the event Eastport failed to repay it." ECF No. 66 at 26.

Under Maryland's Statute of Frauds, Md. Code Ann., Cts. & Jud. Proc. § 5-901, "[u]nless a contract or agreement upon which an action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or another person lawfully authorized by the party, an action may not be brought: (1) to charge a defendant on any special promise to answer for the debt, default, or miscarriage of another person." Here, Defendants have pointed to no writing wherein Roche promises to guarantee the Eastport Yachting Center loan that would take the promise out of the Statute of Frauds. While Defendants might be able to bring an action against Eastport Yachting Center, LLC for the remaining balance on the loan, Roche and Roche Capital are entitled to summary judgment on the claim asserted against them. <u>See</u> <u>D.J. Diamond Imports, LLC v. Silverman Consultants, LLC</u>, Civ. No. 11-2027, 2012 WL 163231 at *4 (D. Md. Jan. 18, 2012); <u>Solid Concepts, LLC v. Fallen Soldiers, Inc.</u>, Civ. No. 09-2377, 2010 WL 3123269 at *2 (D. Md. Aug. 9, 2010).

## G. The East Fort Project Claims

Defendants premise Counts Five (Fraudulent Mis-representation and Concealment) and Count Six (Unjust Enrichment/Money Had and Received) of the Counterclaim on false statements allegedly made by Roche regarding the East Fort Avenue Project. Counterclaim ¶ 44. While vague, the allegations relate to statements made regarding the project's residential zoning, financing commitments and construction contracts. Id. In moving for summary judgment, Roche submitted an affidavit attesting, in some detail, as to the truth of the statements he made concerning the project. Roche Aff. ¶¶ 8-9. He stated that, counter to Delegato's allegations, the property was zoned for residential development. Furthermore, the architectural and construction documents, traffic studies, sewage studies, and water pressure studies had been completed, all at considerable expense to Roche Capital. He relates that a bank that had committed to the project, before he sought her investment, later withdrew that commitment and efforts to find a new bank in the midst of the 2008 financial crisis were unsuccessful. Roche states that Roche Capital lost $1,400,000.00 in the project.

Defendants offer nothing in response to Roche's affidavit, but simply repeat that Delegato only invested in the project because she trusted her brother as the more experienced

investor.  Defs.' Reply at 28.[10]  At this stage in the
litigation, Defendants' cannot rely simply on allegations of
fraud, but must come forward with some evidence that statements
made by Roche to induce Delegato to invest in the project were
false when made.  This they did not do and, thus, Roche and
Roche Capital are entitled to summary judgment as to the fraud
claim.  As to the "unjust enrichment" claim, Defendants provide
no support for the conclusion that Roche or Roche Capital are
retaining any benefit from Delegato's lost investment.

## IV. CONCLUSION

For these reasons, Defendants' motion will be granted as to
Plaintiff's Conversion claim, Count III of the Third Amended
Complaint, but will otherwise be denied.  Plaintiff's cross-
motion will be granted as to Counts Four, Five and Six of the
Counterclaim, but otherwise denied.  In addition, Defendants'
motion to strike will be denied.  A separate order consistent
with this memorandum will be issued.


_____/s/_____
William M. Nickerson

---

[10] Defendants submitted with their Reply some unexecuted
documents that relate to a "Subscription Agreement" for an
entity known as "1475 Patapsco LLC."  Reply, Ex. D.  Aside from
a reference in their pleading that these are "the 'deal'
documents [Roche] provided to [Delegato]" a year after she
invested the money, Defendants provided no evidentiary context
for these documents.

Senior United States District Judge


DATED: May 19, 2013